UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FLEM BALLET ET AL.                                CIVIL ACTION

VERSUS                                            NO: 06-10859

CITY OF GRETNA ET AL.                             SECTION: "S" (2)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the motion for summary judgment of the City of Gretna and Chief Arthur Lawson is **GRANTED**. (Document #49.)

**IT IS FURTHER ORDERED** that the motion for summary judgment of Sheriff Newell Normand is **GRANTED**. (Document #50.)

### I. BACKGROUND

On the Sunday before Hurricane Katrina struck, Venita Ballet reported to the Superdome as a volunteer, as a result of her position as a social service analyst with the State of Louisiana. Venita's husband, Flem, and their daughter, Ciera abandoned their plans to evacuate to Texas and joined Venita at the Superdome. On Thursday, September 1, 2005, when evacuation of the State employees from the Superdome began, Flem and Ciera were not permitted to board the military truck that would take the State employees to a helicopter. At a little before 6:00 p.m., the Ballets decided to walk across the Crescent City Connection to reach their home in Algiers.

The Ballets walked up the down-river "High Occupancy Vehicle" (HOV) lane at Earhart Boulevard near the train station to access the bridge. After walking a mile or two, they encountered two police cars stopped on the east-bank end of the bridge. From a distance of about two city blocks, uniformed officers used a bullhorn to tell the Ballets to turn away and exit the bridge. Flem approached the officers because he thought one might be a Crescent City Connection officer that he knew. One of the officers was holding a rifle, but did not aim it at Flem. Flem turned back because his wife was afraid he would be shot.

It was getting dark when the Ballets exited the bridge ramp at the Convention Center. Venita used the phone at the Convention Center to call her sister, Linda Jones, who was in Baton Rouge. Venita's sister and her husband drove to New Orleans, but were unable to find the Ballets at the Convention Center. The following day, September 2, 2005, a New Orleans police officer that Ciera knew gave the Ballets a ride across the bridge, and dropped them near their home. The Ballets took showers, packed a few belongings, and left in their van. They stayed with Venita's sister in Baton Rouge for approximately one month.

The Ballets filed a petition for damages in Civil District Court for the Parish of Orleans, State of Louisiana against the City of Gretna and the Gretna Police Department. They allege that the defendants used excessive and unreasonable force to deny them travel through the City of Gretna and to deny them access to their home, in violation of the Fourth and Fourteenth Amendments; denied their right of equal protection under the Fourteenth Amendment; denied their right of freedom of movement and travel under Article IV of the United States Constitution; and denied their right of freedom of assembly, in violation of the First Amendment. The

defendants removed the case to federal court, asserting federal question jurisdiction.

In the first amended complaint, the Ballets alleged claims, pursuant to 42 U.S.C. § 1983, against the City of Gretna; Arthur S. Lawson, Jr., the Chief of Police of the City of Gretna in his official capacity; Harry Lee, the Sheriff of Jefferson Parish, in his official capacity; Richard Roe, an unknown officer employed by the Department of Transportation and Development, Crescent City Connection Division, in his official capacity; John Doe, an unknown officer employed by the Jefferson Parish Sheriff, in his official capacity; and the State of Louisiana through the Department of Transportation and Development, Crescent City Connection Division. The plaintiffs further allege that law enforcement formulated a policy to close the bridge to prevent any person from entering the City of Gretna, even if deadly force was required. In the second amended complaint, the Ballets substituted as a defendant Newell Norman, the Sheriff of Jefferson Parish, in his official capacity, in place of Sheriff Harry Lee.[1]

The court granted the Gretna Police Department's motion to dismiss for failure to state a claim upon which relief could be granted, granted the City of Gretna's motion to dismiss the claim of a violation of the constitutional right to intrastate travel and of violation of Fourteenth Amendment rights, and denied the City of Gretna's motion to dismiss the claim of violation of the right to interstate travel and the Fourth Amendment right to be free from the use of excessive force in restraining liberty.[2] The court also granted the Department of Transportation and

---

[1] Sheriff Harry Lee is deceased, and Newell Norman is now the Sheriff of Jefferson Parish.

[2] Record doc. #17. The City of Gretna did not move to dismiss the First Amendment claim of freedom of assembly or the equal protection claim.

Development, Crescent City Connection Division's motion to dismiss for failure to state a claim upon which relief may be granted.[3]

The City of Gretna, Chief Lawson, and Sheriff Normand filed motions for summary judgment on the claims of violation of the right to interstate travel, to be free from the use of excessive force in restraining liberty, equal protection, and freedom of assembly.

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B. Governmental liability

---

[3] Record doc. #46.

The Ballets argue that the Jefferson Parish Sheriff's Office, Sheriff Normand, the City of Gretna, Chief Lawson, and officers of the Crescent City Connection gave joint orders, pursuant to an agreement among them, to close the bridge lanes to foot traffic in general, and to the Ballets in particular, preventing them from reaching a safe haven. The Ballets contend that the deprivation of their right of interstate travel, equal protection, freedom of assembly, and to be free of excessive force is the direct result of the joint orders and actions of the defendants.

A suit against Chief Lawson and Sheriff Normand in their official capacities is in essence a suit against the City of Gretna and the Jefferson Parish Sheriff's Department. Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005) (citing Monell, 98 S.Ct. at 2035 n.55). A local governmental body is liable for damages under § 1983 for constitutional violations resulting from official city policy. See Monell v. Dep't of Soc. Serv., 98 S.Ct. 2018, 2035-36 (1978). A municipality or government body cannot be held vicariously liable under §1983 for the constitutional torts of its employees or agents. Monell, 98 S.Ct. at 2037.

To establish liability for a constitutional violation against the governmental bodies, the plaintiffs must demonstrate that the alleged constitutional offense is the policy or custom of the governmental body. Woodard v. Andrus, 419 F.3d at 352. "[A] government's liability is not confined to laws or actions that have been given formal approval through an entity's policymaking channels. Id. A policy or custom becomes official for purposes of § 1983 when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy. Gros v. City of Grand Prairie, 181 F.3d 613, 615 (5th Cir. 1999). Id. (internal citations omitted). "[T]he

5

unconstitutional conduct must be directly attributable to the municipality or government entity through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." Id. Thus, "a policymaker, an official policy, and the 'moving force' of the policy are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Pitrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

Chief Lawson, Crescent City Connection Chief Helmstetter, Randy Paisant, and Jefferson Parish Chief Deputy Craig Taffaro acknowledge that they discussed the serious problems they were encountering in the aftermath of Hurricane Katrina, including sniper fire, and made the decision to prohibit people from crossing the Crescent City Connection on foot in the interest of public safety. Officers from the Crescent City Connection Police, the Jefferson Parish Sheriff's Office, and the Gretna Police Department were stationed at various posts along the bridge entrance ways. Chief Lawson ordered Deputy Chief Whitmer to set up a roadblock on the bridge and instruct people to turn around.[4]

The Ballets fail to identify a custom or policy that violates the constitutional rights alleged in the complaint. The court address each of the allegations individually.

**1. Right to interstate travel**

The Ballets do not identify a policy formulated by the defendants in their official capacity to restrict the right of interstate travel. Even if the Ballets could identify such a policy, their

---

[4] There is a prohibition against pedestrian traffic on the Crescent City Connection. La. Admin. Code Title 70, Part XXV, § 115C(5). The decision may be viewed merely as a refusal to ignore the prohibition and allow pedestrian traffic.

claim does not rise to the level of the denial of a fundamental right to interstate travel.

As discussed in Alexander v. City of Gretna, No. 06-5404 (E.D.La. Dec. 3, 2008), not every infringement on interstate travel implicates the denial of a fundamental right. "Travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel do not amount to denial of the fundamental right to interstate travel." Cramer v. Skinner, 931 F.2d 1020, 1198 (5th Cir. 1991). The right to interstate travel "does not mean that areas ravaged by flood, fire or pestilence cannot be quarantined when it can be demonstrated that unlimited travel to the area would directly and materially interfere with the safety and welfare of the area." Zemel v. Rusk, 85 S.Ct. 1271, 1280 (1965).

In the aftermath of Hurricane Katrina, New Orleans and the surrounding area suffered unprecedented damage that created difficult decisions regarding the safety of its inhabitants. The restrictions on foot traffic across the bridge was one of many measures taken to address serious safety issues. The Ballets' suffered the inconvenience of having to wait a day until they were able to travel across the bridge in a vehicle. They retrieved their vehicle at their home and traveled to Baton Rouge, where they remained for approximately one month. The restriction of pedestrian traffic on the bridge and the temporary delay in reaching Baton Rouge does not amount to the denial of the Ballet's fundamental right to interstate travel.

**2. Excessive force**

The Ballets do not identify a policy formulated by the defendants in their official capacity to use excessive force. The Ballets allege only that one of the unidentified officers blocking the bridge had a rifle. The defendants provide the sworn affidavit of Chief Deputy Taffaro that no

policy was created to authorize the use of "deadly force" to prevent foot traffic. The Ballets have not put forth evidence that there is a genuine issue for trial as to whether the use of deadly force was authorized, and the defendants are entitled to judgment as a matter of law.

### 3. Equal protection

The Ballets contend that the defendants violated their right of equal protection by denying them access to their home. "It is clearly established that a state violates the equal protection clause when it treats one set of persons differently from others who are similarly situated." Yates v. Stalder, 217 F.3d 332, 334 (5th Cir. 2000). The inquiry focuses on whether the plaintiff is similarly situated to another group for purposes of the challenged conduct. Id. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999).

The Ballets do not identify a policy formulated by the defendants in their official capacity to deprive them of their right of equal protection. Even if they could demonstrate such a policy, the Ballets have not alleged facts or produced evidence that the defendants treated one set of persons differently from the other. Accordingly, the Ballets have not produced evidence of the existence of a genuine issue for trial, and the defendants are entitled to judgment as a matter of law on the equal protection claim.

### 4. Freedom of assembly

The Ballets allege that the defendants violated their First Amendment right of freedom of assembly by not permitting them to cross the bridge on foot. "Freedom of association . . .has its

genesis in freedom of speech." Thorne v. Jones, 765 F.2d 1270, 1273 (5th Cir. 1985) (citation omitted). "It has always meant the right to associate ideologically: for advancement of beliefs and ideas." Id. (internal quotation and citation omitted). "The right is protected because it promotes and may well be essential to the effective advocacy of both public and private points of view, particularly controversial ones that the First Amendment is designed to foster." Id. (internal quotation and citation omitted).

The Ballets have not alleged facts with particularity sufficient to establish that the defendants formulated a policy to violate their right of assembly. See Morrison v. City of Baton Rouge, 761 F.2d 242, 244-45 (5th Cir. 1985) (the plaintiff must allege with particularity material facts to establish a right to recover). Accordingly, the defendants are entitled to judgment as a matter of law on the First Amendment claim.

### III. CONCLUSION

The plaintiffs have failed to allege facts identifying a custom or policy that violated their constitutional rights of interstate travel, to be free from excessive force, equal protection, and freedom of assembly. Accordingly, the defendants are entitled to judgment as a matter of law, and their motions for summary judgment are granted.

New Orleans, Louisiana, this __18th__ day of June, 2009.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**